IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUZANNE PEAKE, | : | |
|     Plaintiff | : | Civil Action No. 05-CV-1687 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| DONALD PATTERSON, et al., | : | |
|     Defendants | : | |

## MEMORANDUM

Before the Court are four motions for sanctions filed by Plaintiff (Doc. Nos. 42, 44, 47, and 52). The motions are ripe for disposition. For the reasons that follow, Plaintiff's motions will be denied.

## I.    BACKGROUND

At all times relevant to this litigation, Plaintiff Suzanne Peake worked as a welfare fraud investigator supervisor at the Office of the Inspector General for the Commonwealth of Pennsylvania. On August 18, 2005, Peake brought this action pursuant to 42 U.S.C. § 1983 against her superiors – Defendants Donald Patterson, Donald McCarthy, and Earl Smith – alleging that they retaliated against her for exercising her First Amendment rights. (Doc. No. 1.) Jury selection in the case occurred on February 5, 2007, and presentation of the evidence began on February 13, 2007. On February 16, 2007, the jury returned a verdict in Plaintiff's favor with damages in the amount of $ 90,500.

Shortly before trial commenced, Plaintiff filed four motions for sanctions (Doc. Nos. 42, 44, 47, 52), and submitted an omnibus brief in support of those motions (Doc. No. 53). Thereafter, Defendants filed briefs in opposition to the motions. (Doc. Nos. 72, 73, 80, 81.)

## II.    STANDARD OF REVIEW

Plaintiff does not identify the source of authority by which she seeks sanctions. Various Federal Rules of Civil Procedure provide for sanctions in certain situations. See Fed. R. Civ. P. 11, 16(f), 26(g), 37(g); accord LR 37.1, 83.3. There are also statutory provisions that authorize sanctions. See, e.g., 28 U.S.C. § 1927. None of these sources of sanctioning authority apply to the circumstances outlined in Plaintiff's motions. Rather, Plaintiff invokes the Court's inherent power to sanction. Chambers v. NASCO, Inc., 501 U.S. 32, 50-51 (1991).

District courts have the inherent power to sanction attorneys who engage in abusive litigation practices. Roadway Express Inc. v. Piper, 447 U.S. 752, 765 (1980) (citing Link v. Wabash R.R. Co., 370 U.S. 626, 632 (1962)). However, the inherent power to sanction must be used sparingly because such power is "shielded from direct democratic controls," id., and because of the "very potency" of the power, Chambers, 501 U.S. at 44. Thus, the inherent power to sanction is generally "reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists." In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 278 F.3d 175, 189 (3d Cir. 2002) (quoting Martin v. Brown, 63 F.3d 1252, 1265 (3d Cir. 1995)).

Generally, before exercising its inherent power to sanction, a court must make a finding of bad faith on the part of the attorney. Tracinda Corp. v. DaimlerChrysler AG, — F.3d —, Nos. 05-2363, 05-2482, 2007 WL 2701965, at *26 (3d Cir. Sept. 18, 2007). Additionally, due-process considerations require a court to provide "fair notice and an opportunity for a hearing on the record." Angelico v. Lehigh Valley Hosp., Inc., 184 F.3d 268, 279 (3d Cir. 1999) (quoting Roadway Express, 447 U.S. at 767).

**III.    DISCUSSION**

Plaintiff argues that the Court should impose sanction for two reasons: (1) because Defendants unreasonably and repeatedly delayed the production of their trial exhibits; and (2) because defense counsel violated a court order by obtaining medical records without Plaintiff's permission. The Court will address each basis for sanctions in turn.

    **A.    Defendants' alleged failure to timely provide exhibits (Doc. Nos. 42, 44).**

In her first two motions for sanctions (Doc. Nos. 42, 44), Plaintiff complains that Defendants failed to provide Plaintiff with trial exhibits in a timely fashion. Specifically, Plaintiff argues that Defendants refused to provide Plaintiff with their trial exhibits until the eve of trial, in a deliberate effort to impede Plaintiff's ability to present her case.

Trial was set to commence in this case on February 5, 2007. On January 12, 2007, the Court held a pretrial conference with the parties, and Plaintiff did not object to any failure to provide the exhibits. On the morning of January 31, 2007, the Court convened a telephone conference to discuss an outstanding discovery dispute regarding Plaintiff's medical records, discussed below. Once again, Plaintiff raised no objection to Defendants' dilatory production of the exhibits. Having failed to mention any concerns during the conference held earlier that morning, on the evening of January 31, 2007, Plaintiff filed her first motion for sanctions. Despite the noirish description of Plaintiff's counsel's attempts to retrieve the exhibits for trial,[1]

---

[1] See, e.g., (Doc. No. 42, ¶¶ 11-12) ("At 4:00 p.m., on Wednesday, January 31, 2007, [Plaintiff's counsel] arrived at the Office of the Attorney General for the Commonwealth of Pennsylvania. [Counsel] identified themselves to the receptionist at the Attorney General's Office, 15th Floor, and [explained] that the purpose of the visit was to pick up exhibits and exchange the medical records. The receptionist advised that [Defendants' attorneys] were in the conference room together speaking, she then picked up the telephone and said 'He's here.'").

one essential plot element is missing: notice to the Court.

By the time the jury selection was set to occur on February 5, 2007, Plaintiff had filed three motions for sanctions. Yet, Plaintiff never sought intervention by the Court to resolve the dispute before trial. Plaintiff took no opportunity to raise her concerns either at the pretrial conference or during the telephone conference with the Court held that morning. Instead, Plaintiff filed motion after motion arguing that Defendants were dragging their feet. While the Court is certainly concerned with the allegations of dilatory litigation tactics, Plaintiff's late-in-the-game claims that Defendants intentionally attempted to thwart her preparation for trial ring hollow.

Moreover, after jury selection, the Court inquired as to whether the parties had the documents necessary to proceed to trial, and the parties indicated that the exhibits had been exchanged. At the commencement of trial, Plaintiff acknowledged that any prejudice to her ability to present her case caused by the late receipt of trial exhibits had been cured. Plaintiff's first two motions for sanctions (Doc. Nos. 42, 44) will be denied.

**B.     Defendants' alleged violation of Court order (Doc. Nos. 47, 52).**

Plaintiff's third and fourth motions for sanctions (Doc. Nos. 47, 52) relate to Defendants' actions in procuring certain of Plaintiff's medical records. The Court's involvement with these motions also started on January 31, 2007, when Defendants properly sought guidance from the Court to resolve a discovery dispute concerning Plaintiff's medical records, which Defendants claimed were illegible. At the telephone conference held the morning of the 31st, Defendants sought leave from the Court to obtain a protective order to enable counsel to obtain Plaintiff's medical records because the copy provided by Plaintiff was unclear. After hearing argument

from the parties, the Court denied Defendants' request for a protective order, and ordered Plaintiff to provide a "clean" copy of the records to Defendants.

Despite the fact that the Court denied Defendants' request for a protective order, and fashioned an appropriate remedy, Defendants, apparently impatient, proceeded to obtain the documents directly from Peake's medical doctors. The narrow issue now before the Court is whether Defense Counsel violated a Court order by obtaining Plaintiff's medical records from her doctors directly, rather than by awaiting Plaintiff's delivery of the records. While counsel's conduct certainly violated the spirit of the Court's order and may even have violated certain laws,[2] the Court cannot find that her conduct is in direct violation of the Court's orders. Accordingly, the Court will decline sanctions and instead admonish counsel to carefully review future orders and offer the good faith compliance that the Court expects from an officer of the Court and representative of the Commonwealth.

Neither Plaintiff's nor Defendants' counsel have clean hands in this regard, but fortunately neither party suffered prejudice at trial. According to Defendants, the motive for their actions stemmed from Plaintiff's repeated offers and subsequent withdrawals of permission to obtain medical records. Defendants further claim that because the parties could not resolve

---

[2] Throughout the brief in support of Plaintiff's motion for sanctions, Plaintiff repeatedly invokes the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191. For example, Plaintiff claims that Defendants "served the subpoena to obtain Ms. Peak's [sic] medical records in violation of the HIPPA [sic] laws." (Doc. No. 53, at 9.) However, Plaintiff acknowledges in her brief that the alleged HIPAA violations are not properly before the Court in the context of her motions for sanctions. See (Doc. No. 53, at 14) ("Plaintiff believes that the release of her privileged and private medical records constitutes a HIPPA [sic] violation . . . but as [the Court] correctly pointed out . . . that is a separate claim."). Accordingly, the Court's discussion is limited to whether Defendants acted in violation of an order of this Court.

the dispute amicably, they sought an order of the Court.  After the Court denied a request for a protective order, Defendants acted unilaterally.  Yet, the Court did not explicitly prohibit them from pursuing the records without a Court order, and therefore Defendants did not act <u>ultra</u> <u>vires</u>.

On February 6, 2007, the parties again called upon the Court to resolve disputes over the records, which ultimately resulted in a Court order directing Defendants to submit the medical records they had obtained through subpoena duces tecum.  (Doc. No. 50.)  By February 13, 2007, both parties had the necessary records for trial.  It is unfortunate, indeed, that the parties could not obtain "clean" medical records without this side-stage litigation.  However, the Court finds that Defendants' actions with respect to the Court's orders do not warrant sanctions.  Plaintiff's third and fourth motions (Doc. Nos. 47, 52) will be denied.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motions for sanctions will be denied.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SUZANNE PEAKE,** | : | |
|     Plaintiff | : | Civil Action No. 05-CV-1687 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| **DONALD PATTERSON, et al.,** | : | |
|     Defendants | : | |

## **ORDER**

**AND NOW**, on this 28th day of September, 2007, for the reasons set forth in the memorandum accompanying this order, **IT IS HEREBY ORDERED THAT** Plaintiff's motions for sanctions (Doc. Nos. 42, 44, 47, and 52) are **DENIED**.

                                                      s/ Yvette Kane
                                                    Yvette Kane, Chief Judge
                                                    United States District Court
                                                    Middle District of Pennsylvania