**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SUZANNE PEAKE, | : | |
| Plaintiff | : | Civil Action No. 05-CV-1687 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| DONALD PATTERSON, et al., | : | |
| Defendants | : | |

**<u>MEMORANDUM</u>**

Before the Court is Defendants' post-trial motion for judgment as a matter of law and for

a new trial (Doc. No. 82).  The motion is ripe for disposition.  For the reasons that follow, the

motion will be granted in part.

**I.      BACKGROUND**

At all times relevant to this litigation, Plaintiff Suzanne Peake was an employee of the

Office of the Inspector General for the Commonwealth of Pennsylvania ("OIG").  On August 18,

2005, Peake brought this action pursuant to 42 U.S.C. § 1983 against her superiors – Defendants

Donald Patterson, Donald McCarthy, and Earl Smith – alleging retaliation against her for

exercising her First Amendment rights.  (Doc. No. 1.)  Peake claimed that during her

employment as a welfare fraud investigator supervisor, she was retaliated against for

complaining about five subjects: (1) the work hours of certain employees; (2) the misuse of state

vehicles; (3) unequal enforcement of work-attendance rules against her; (4) a "smoke room"; and

(5) unequal treatment of men and women at the OIG.

On February 16, 2007, after a three-day trial, a jury returned a verdict in Peake's favor,

crediting some of her allegations of retaliation.  In the first of three verdict forms, the jury found

that Peake made complaints about the preferential treatment of certain employees, the misuse of

state vehicles, unequal application of work-attendance rules, and the smoke room.  The jury also

found that she did not complain about the unequal treatment of men and women at the OIG. (Doc. No. 68.)

In addition, aware of the Supreme Court's ruling in <u>Garcetti v. Ceballos</u>, 126 S. Ct. 1951 (2006), and the heavily fact-based inquiry required by <u>Garcetti</u>, <u>see</u> <u>Foraker v. Chauffinch</u>, — F.3d —, 2007 U.S. App. LEXIS 20739, at *25 (3d Cir. Aug. 30, 2007), the Court separately queried the jury in the first verdict form as to whether Peake made these complaints pursuant to her official employment duties.  The jury found that Peake made the complaints about unequal application of work-attendance rules against her and about the smoke room pursuant to her official duties.  The jury also found that Peake's complaints about preferential treatment of certain employees and the misuse of state vehicles were not made pursuant to her official duties.

Satisfied that Peake's complaints about the preferential treatment of the employees and about misuse of state vehicles constituted protected speech under the First Amendment, the Court then instructed the jury on the issue of whether Defendants retaliated against her.  In the second of the verdict forms, the jury found that Peake's complaints prompted Defendants to retaliate against her, and rejected Defendants' affirmative defense that Defendants would have taken the same action absent Peake's protected activity.  (Doc. No. 69.)  The Court then instructed the jury on the issue of damages.  In the last of the verdict forms, the jury awarded Plaintiff damages in the amount of $90,500, consisting of $500 in compensatory damages and $30,000 per Defendant in punitive damages.  (Doc. No. 70.)

## II.    DISCUSSION

Defendants raise three principal arguments in their post-trial motion.  First, Defendants argue that judgment should be entered in favor of Patterson because Plaintiff failed to prove

personal involvement required under § 1983.  Second, Defendants argue that the jury's award of

punitive damages was excessive, and should be reduced on due-process grounds.  Third,

Defendants argue that a new trial is appropriate because the jury's verdict is against the weight

of the evidence and because inclement weather adversely affected their ability to defend against

Plaintiff's claims.  The Court will address these arguments seriatim.

### A.   Personal involvement of Patterson

The first issue to be addressed is Patterson's renewed motion for judgment as a matter of

law pursuant to Federal Rule of Civil Procedure 50.  Judgment as a matter of law "should be

granted only if, viewing the evidence in the light most favorable to the nonmovant and giving

[the nonmovant] the advantage of every fair and reasonable inference, there is insufficient

evidence from which a jury reasonably could find liability."  Lightning Lube v. Witco Corp., 4

F.3d 1153, 1167 (3d Cir. 1993).  Additionally, when "entertaining a motion for judgment as a

matter of law, the court should review all of the evidence in the record," Reeves v. Sanderson

Plumbing Prods., 530 U.S. 133, 150 (2000), and "disregard all evidence favorable to the moving

party that the jury is not required to believe," id.  The Third Circuit has admonished that motions

for a judgment as a matter of law should be granted sparingly, and only in cases when there is

not the "minimum quantum" of legal evidence sufficient to sustain a verdict.  Dun & Bradstreet

Software Servs. v. Grace Consulting, Inc., 307 F.3d 197, 205 (3d Cir. 2002); EEOC v. Fed.

Express Corp., No. 02-CV-1194, 2005 U.S. Dist. LEXIS 5834, at *5 (M.D. Pa. Jan. 18, 2005).

It is settled law that "a defendant in a civil rights action must have personal involvement

in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation

which he or she neither participated in nor approved."  Baraka v. McGreevey, 481 F.3d 187, 210

(3d Cir. 2007). Personal involvement does not necessarily require proof of direct participation; a plaintiff can demonstrate that a supervising defendant had personal involvement through "personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Defendant urges the Court to enter judgment as a matter of law because although the record contains evidence that Patterson knew of Plaintiff's protected activity, the record does not support a finding that Patterson had personal involvement with the acts of retaliation against Plaintiff.

The evidence of record shows that on more than one occasion, Plaintiff complained to Patterson, who served as Inspector General of the Commonwealth of Pennsylvania, and to her direct supervisors, McCarthy and Smith, about preferential treatment given to certain employees and about the misuse of state vehicles. After Plaintiff made these complaints, Patterson forwarded her concerns to McCarthy and Smith, and directed them to investigate her claims. Thereafter, Peake received a written reprimand and a one-day suspension from McCarthy and Smith. The jury found that the discipline taken against Peake was retaliation for her complaints.

Plaintiff points to no evidence of acts by Patterson himself that would support a finding of retaliation by him. Throughout the case, Plaintiff's theory has been that Patterson took a "hands-on approach" to the investigation of Plaintiff's claims, and therefore ratified the retaliatory acts of McCarthy and Smith.[1] The record is replete with evidence of Patterson's actual knowledge of *Plaintiff's protected activity*. However, Plaintiff has not identified any evidence in the record that would support a finding that Patterson directed, or even had actual

---

[1] Plaintiff does not argue that Patterson *directed* McCarthy and Smith to retaliate against Peake, and the record would not support such a position.

4

knowledge of the *Defendants' retaliatory conduct*.  Without evidence that Patterson actually

knew of or acquiesced in McCarthy and Smith's adverse actions against Peake, the record does

not support judgment against Patterson.  Even when taking "every fair and reasonable inference"

in favor of Peake, the Court cannot conclude that Pattersons's admittedly hands-on approach to

the investigation equated to personal direction or actual knowledge of the impermissible

retaliation.  Thus, Patterson is entitled to judgment as a matter of law.

       **B.**       **Punitive damages**

       Defendants second argument in their post-trial motion is that the jury's award of $90,000

in punitive damages is unconstitutionally excessive, and that the Court should reduce the award.

The Court disagrees.

        It is firmly established that "the Constitution imposes certain limits, in respect both to

procedures for awarding punitive damages and to amounts forbidden as 'grossly excessive.'"

Phillip Morris USA v. Williams, 127 S. Ct. 1057, 1063 (2007); State Farm Mut. Auto. Ins. Co. v.

Campbell, 538 U.S. 408, 417 (2003).  Grossly excessive punitive-damage awards are

unconstitutional insofar as "elementary notions of fairness . . . dictate that a person receive fair

notice . . . of the severity of the penalty that a State may impose," and because "[t]o the extent

that an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary

deprivation of property."  Campbell, 538 U.S. at 417.

       In BMW of North America, Inc. v. Gore, 517 U.S. 559, 574-75 (1996), the Supreme

Court established three "guideposts" for courts to consider when evaluating whether a jury's

award of punitive damages is so excessive as to deprive a defendant of fair notice.  Those

guideposts are: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the

disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." Campbell, 538 U.S. at 418 (citing Gore, 517 U.S. at 574-75).  The Court will address each in turn.

### 1.   *Reprehensibility of the conduct*

The first guidepost, the degree of reprehensibility, "is the most important indicium of the reasonableness of a punitive damages award." CGB Occupational Therapy, Inc. v. RHA Health Servs., --- F.3d ---, 2007 U.S. App. LEXIS 20073, at *12 (3d Cir. Aug. 23, 2007) (quoting Campbell, 538 U.S. at 419).  Under this guidepost, the Supreme Court has instructed courts to consider whether: "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." Campbell, 538 U.S. at 419.

While the direct monetary loss to Plaintiff was minimal, Plaintiff testified that she endured many months of retaliation, and that she was ostracized and set apart in the workplace in a demeaning and demoralizing way (Tr. 402 ,420-23).  It is unclear whether the jury compensated the latter harm with its compensatory award of $500.  Arguably, the $500 in compensatory damages may reflect the financial impact of a one-day suspension, or it may reflect the jury's determination as to the emotional damage, or both.  Nevertheless, a reasonable interpretation of the jury's verdict could support a finding that the injuries to Peake were not purely economic in nature.  Moreover, in the unique context of First Amendment retaliation, the

6

resulting harm extends beyond the emotional and financial effects of Defendants' retaliatory

conduct, because "[s]ilencing a public employee seeking to speak on a matter of public concern

deprives a self-governing society of information that may be vital to informed decision-making."

Azzaro v. County of Allegheny, 110 F.3d 968, 977 (3d Cir. 1997) (explaining that the

instrumental value of "public concern speech" demands special First Amendment protection).

Thus, even though the actual amount of financial harm in this case is not significant, punishing

an individual for her constitutionally protected speech warrants close oversight, and in the proper

case, may allow an award far in excess of an appropriate award in a business case.  Cf. Tate v.

Dragovich, No. 96-4495, 2003 WL 21978141, at *8 (E.D. Pa. Aug. 14, 2003).  Finally, as the

jury found that Defendants acted wantonly or maliciously in retaliating against Plaintiff, the fifth

factor also weighs in favor of a larger punitive-damages award.

        Thus, at the first Gore guidepost, the Court finds that at least two of the factors of

reprehensibility are present, thereby supporting a larger punitive-damages awards.

### 2.      *Disparity between harm and punitive damages award*

        In evaluating the second Gore guidepost, the Supreme Court has cautioned that there is

no constitutionally prescribed multiplier for determining the disparity between actual and

punitive damages.  Indeed, the Court has eschewed establishing "rigid benchmarks" or "a bright-

line ratio which a punitive damages award cannot exceed."  Campbell, 538 U.S. at 425-26.

Instead, "the ratio of punitive damages to the harm caused by the defendant is a tool to ensure

that the two bear a reasonable relationship to each other."  Willow Inn, Inc. v. Pub. Serv. Mut.

Ins. Co., 399 F.3d 224, 233-34 (3d Cir. 2005).  Nevertheless, the jury's award in this case results

in a 60:1 ratio per Defendant.  Such an award, Defendants argue, "must surely 'raise a suspicious

judicial eyebrow.'" <u>Gore</u>, 517 U.S. at 583 (quoting <u>TXO Production Corp. v. Alliance Resources</u>

<u>Corp.</u>, 509 U.S. 443, 481 (1993) (O'Connor, J., dissenting)).  On the other hand, Plaintiff argues

that given the low value of compensatory damages in this case, the jury's award is appropriate

because without punitive damages, Plaintiffs that suffer negligible actual harm might feel that

the game is not worth the candle.  <u>Accord</u> <u>Mathias v. Accor Econ. Lodging</u>, 347 F.3d 672, 677

(7th Cir. 2003) (upholding a punitive-damages award 37.2 times greater the compensatory

damages where the compensatory damages were "slight and at the same time difficult to

quantify").

        The Supreme Court has found that single-digit multipliers are generally "more likely to

comport with due process" than larger multipliers.  <u>Campbell</u>, 538 U.S. at 424.  However, the

preference for single-digit multipliers is not a hard-and-fast rule.  Instead, double-digit

multipliers may be appropriate in cases where reprehensible acts result in small compensatory

awards.  <u>See</u> <u>Gore</u>, 517 U.S. at 582 (stating that "low awards of compensatory damages may

properly support a high ratio than high compensatory awards, if, for example, a particularly

egregious act has resulted in only a small amount of economic damages"); <u>see also</u> Lauren R.

Goldman and Nickolai G. Levin, <u>State Farm at Three: Lower courts' application of the ratio</u>

<u>guidepost</u>, 2 N.Y.U. J. L. & Bus. 509, 514-24 (2006).  In civil-rights cases, in particular, larger

multipliers may pass constitutional muster.  <u>Sherman v. Kasotakis</u>, 314 F. Supp. 2d 843, 874-75

(N.D. Iowa 2004) (upholding a 12,500:1 ratio in civil-rights case with nominal damages); <u>Russo</u>

<u>v. City of Hartford</u>, 419 F. Supp. 2d 134, 155 (D. Conn. 2006) ("Rather, particularly in light of

the fact that the compensatory damages could not include damages for the fact of the First

Amendment violation itself, [the court] finds that the ratio is reasonable.").

When considering this guidepost, therefore, the Court finds that it neither supports a finding that the award is constitutionally acceptable, nor does it weigh against such a finding.

### 3.   *Difference between punitive damages and civil penalties*

At the third guidepost, the Court must consider the disparity between the punitive-damages award and comparable civil penalties that could otherwise be awarded.  This third guidepost "reflects a 'deference to legislative judgments concerning the appropriate sanctions for the conduct at issue,' and provides notice of possible sanctions to potential violators."  Willow Inn, 399 F.3d at 237 (quoting Gore, 517 U.S. at 583-84).  Defendants suggest that under the Pennsylvania Whistleblower Law, 43 P.S. § 1421 et seq., Plaintiff would be unable to recover punitive damages, and Defendants' penalty would be statutorily capped at $500.  Rankin v. City of Philadelphia, 963 F. Supp. 463, 478-79 (E.D. Pa. 1997); 43 P.S. §§ 1425, 1426.  Accordingly, they argue Defendants lacked sufficient notice that their actions would result in a five-figure punitive-damages award.  The Court notes that while the remedies available under § 1983 are certainly more robust than those available under the Pennsylvania Whistleblower Law, the Court is "reluctant to overturn the punitive damages award on this basis alone."  Willow Inn, 399 F.3d at 238.  Therefore, although the third Gore guidepost weighs in favor of reducing the punitive-damages award, the Court does not find that it necessarily requires a drastic reduction in the jury's award.

### 4.   *Synthesis of the Gore guideposts*

Having considered the Gore guideposts, the Court is satisfied that the jury's punitive-damages award is not constitutionally excessive.  When considering a jury's punitive-damages award, the judicial function of the Court "is to police a range, not a point."  Mathias, 347 F.3d at

678.  The jury's verdict established that Defendants McCarthy and Smith knowingly retaliated against Plaintiff for exercising her protected First Amendment rights by complaining about governmental abuse, waste, and fraud.  The record supports a finding that Plaintiff was suspended for a day without pay, formally reprimanded, and subjected to harsh treatment because she raised concerns about the misuse of state vehicles and preferential treatment of certain employees.  Evidence of reprehensibility is present in the record, particularly in light of the fact that Defendants worked at the Office of the Inspector General, which is specifically charged with identifying and reporting governmental abuses and waste.  Additionally, the jury's findings with respect to the reprehensibility of Defendants' conduct and to the relatively insubstantial amount of compensatory damages support a ratio in the double digits.  Finally, while the civil penalties that could be imposed under the Pennsylvania state law is smaller, the Court is reluctant to reduce the jury's award on that basis alone.  In sum, the Court is satisfied that the jury's award of $30,000 in punitive-damages per Defendant is not grossly excessive.

### C.      New Trial

Defendants' final argument in the post-trial motion is that a new trial is appropriate in this case.  Federal Rule of Civil Procedure 59(a) provides that a court may grant a new trial "to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  Fed. R. Civ. P. 59(a).  Defendants assert that a new trial is appropriate for two reasons.  First, they argue that the verdict is against the weight of the evidence.  Second, they argue that inclement weather warrants a new trial.  The Court disagrees on both counts.

###### 1.      *Weight of the evidence*

This Court is empowered to "order a new trial upon the motion of a party . . . where there is insufficient evidence to support the verdict or where the verdict was against the weight of the evidence."  Greenleaf v. Garlock, Inc., 174 F.3d 352, 365 (3d Cir. 1999).  However, the Third Circuit has made clear that granting a new trial on the grounds that the verdict was against the weight of the evidence is proper "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience."  Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1353 (3d Cir. 1991).  Indeed, the power to grant a new trial is necessarily limited "to ensure that a district court does not substitute its 'judgment of the facts and the credibility of the witnesses for that of the jury.'"  Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 211 (3d Cir. 1992) (quoting Lind v. Schenley Indus., Inc., 278 F.2d 79, 90 (3d Cir. 1960)).

Defendants argue that the weight of the evidence shows that Plaintiff's repeated tardiness caused the written reprimand, and that it was her own inappropriate conduct that led to the one-day suspension, not retaliation.  Despite Defendants' protests that Plaintiff brought the discipline upon herself, the record supports the jury's conclusion insofar as Plaintiff was singled out for discipline with respect to her tardiness.  See, e.g., Tr. at 589.  That Plaintiff was, in fact, tardy is a significant factor that the jury likely considered when determining whether Defendants would have taken the same course of action; however, the issue of whether Plaintiff's protected activity prompted the unequal enforcement of the office rules is properly a factual inquiry, and the Court will not disturb the jury's verdict.

Defendants argue that the weight of the evidence indicates that Plaintiff's suspension was

caused by insubordination, not retaliation.  As above, the Court is unwilling to substitute its judgment for that of the jury.  In this case, the jury likely credited Plaintiff's assertion that she was suspended because Defendants sought retaliation for her engaging in protected activity, not because of insubordination.  The weight of the record simply does not necessitate a new trial on that point.

### 2.    Inclement weather

Defendants final argument for a new trial is that inclement weather adversely affected their ability to present a defense.  In particular, Defendants note that the trial occurred amidst a severe winter storm, which thwarted trial on February 14.  Defendants argue that the loss of a trial day effectively forced Defendants to condense their defense in order to conclude before Friday, February 16.  Defendants made a tactical decision, independent of any suggestion by the Court, to expedite its presentation.  Despite the trying circumstances surrounding the trial, Defendants were permitted time and the opportunity to present a defense.  Defendants' counsel managed to examine fifteen defense witnesses, in addition to the thorough and effective examination of Plaintiff and all three Defendants during Plaintiff's case-in-chief.  Furthermore, Defendants raised no objection after trial, nor did they suggest that the weather worked a detriment to the presentation of the case under the circumstances.  Accordingly, Defendants' motion for a new trial will be denied.

## III.    CONCLUSION

For the foregoing reasons, Defendants' motion for judgment as a matter of law and for a new trial shall be granted in part and denied part.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SUZANNE PEAKE,** | : | |
| **Plaintiff** | : | **Civil Action No. 05-CV-1687** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **DONALD PATTERSON, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

## <u>ORDER</u>

     **AND NOW**, on this 28th day of September, 2007, for the reasons set forth in the memorandum accompanying this order, **IT IS HEREBY ORDERED THAT** Defendants' motion for judgment as a matter of law, or in the alternative, for a new trial (Doc. No. 82) is **GRANTED** in part and **DENIED** in part as follows:

    1.    Judgment as a matter of law  is **GRANTED** in favor of Defendant Donald Patterson.

    2.    In all other respects, Defendants' motion is **DENIED**.

     **IT IS FINALLY ORDERED THAT** Plaintiff's motion for attorneys' fees (Doc. No. 76) is no longer stayed.  Defendants shall submit a brief in opposition to the motion no later than October 19, 2007.

                                  S/ Yvette Kane           
                                  Yvette Kane, Chief Judge
                                  United States District Court
                                  Middle District of Pennsylvania